UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN LEWIS HAYES,

Plaintiff,

v.

OLIVEROS, et al.,

Defendants.

Case No. 25-cv-00203-EKL

**ORDER SCREENING AND PARTIALLY DISMISSING AMENDED COMPLAINT, ORDERING SERVICE**

Plaintiff Kevin Lewis Hayes filed the instant *pro se* civil rights lawsuit challenging incidents that occurred at Correctional Training Facility in Soledad. ECF No. 1. The Court previously screened his complaint and granted Plaintiff leave to amend. ECF No. 13. The amended complaint is now before the Court for screening pursuant to 28 U.S.C. § 1915A(a). ECF No. 15. For the reasons set forth below, the Court partially DISMISSES the amended complaint and ORDERS SERVICE of Defendants Oliveros, Macklin, and the California Department of Corrections and Rehabilitation ("CDCR").

## I.    LEGAL STANDARDS

### A.    Standard of Review

Federal courts engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims, which are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id*. § 1915A(b)(1)-(2). *Pro se*

pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B.     Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability may be imposed on an individual defendant under Section 1983 if the plaintiff can show that the defendant's actions actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of Section 1983 if he does an affirmative act, participates in another's affirmative act, or fails to perform an act that he is legally required to do, causing the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633.

### II.     PLAINTIFF'S ALLEGATIONS

Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights by the following defendants: Licensed Vocational Nurse B. Oliveros, Correctional Officers Macklin, Toscano, and Lopez, and Sergeants Wilson and Rendon. ECF No. 15.

United States District Court
Northern District of California

United States District Court
Northern District of California

Per the amended complaint, Macklin and Oliveros carried out a "premed[i]tated ruse" against Plaintiff on June 12, 2024, because he wrote complaints about each of them. ECF No. 15 at 5. Plaintiff was allegedly moved from his cell into a cage near the Investigative Services Unit ("ISU") by Macklin while prisoners in the unit were eating breakfast. *Id*. at 3. Several ISU officers and Toscano were present as Plaintiff was placed inside the cage and told to strip so officers could check him for weapons. *Id.* at 6. Plaintiff removed his clothes as directed and put them back on shortly thereafter. *Id.* at 6-8. The ISU officers explained that they were investigating a "kite"[1] that reportedly stated that Plaintiff's life was in danger because he had instigated conflict among groups of prisoners. *Id.* at 6-7.

Later that day, Wilson, Oliveros, and Toscano stopped by the cage and informed Plaintiff that he needed a medical evaluation to check for potential injuries. ECF No. 15 at 7-8. Plaintiff was again asked to strip. *Id.* at 8. Plaintiff explained that he had already stripped for the other officers and that he did not have any injuries except a bruise from surgery on his left ankle. *Id.* Oliveros allegedly stated, "Oh yeah, I remember that, and I also remember that you wrote me up over your meds." *Id.* at 8. Wilson told Plaintiff that Oliveros would not leave – and Plaintiff would not be allowed out of the cage – unless he removed his clothing to allow Oliveros to conduct the medical evaluation. *Id.* at 8-9. Plaintiff removed his sock from his left foot, rolled up his pant leg, and showed Oliveros the bruise from his surgery. *Id.* at 9. After Wilson left the area, Toscano allegedly told Plaintiff that he could return to his cell if he removed his clothes and allowed Oliveros to conduct the medical evaluation. *Id.* at 9. Oliveros asked to see Hayes' right ankle, and Hayes acquiesced and took off his right shoe. *Id.* at 9-10. Oliveros asked Plaintiff to undress. Plaintiff, who was wearing only a shirt, boxers, and shorts, did so, pulling down his boxers and shorts in one motion, and then turning around as the ISU officers had instructed him to do earlier that day. *Id.* at 10. Plaintiff did not intend to remove his boxers, but they were pulled down with his shorts. *Id.* As Plaintiff got dressed, Toscano stated, "you just made it wors[e] for yourself," and Oliveros told him that it was her turn "to write [him] up, for writing [Oliveros] up."

---

[1] The term "kite" is used to describe a written message exchanged by prisoners. *See Paigly v. Frauenheim*, No. 15-cv-05162-HSG, 2017 WL 2986244, *5 (N.D. Cal. Jul. 13, 2017).

*Id.* at 10-11.

After being in the cage for over three hours, Plaintiff was asked to sign a form and escorted back to his cell. He was then instructed to gather his belongings because he was being moved to a different wing, E-Wing. ECF No. 15 at 12. Rendon allegedly told Plaintiff that his new cell would have "I.E.X." – which stands for indecent exposure – posted on his door for the next 90 days. *Id.* at 13. Plaintiff did not receive notice of a rules violation until after he complained that he was placed in the marked cell without a hearing on the alleged indecent exposure. He was found guilty of the violation but assessed no punishment as a result. *Id.*

Near the end of the 90-day period, Lopez asked Plaintiff where he would like to be housed. Because he was disabled, Plaintiff stated that he would like a wing that has "lower tier showers for the Blacks," specifying "C-Wing, G-Wing, D-Wing, and E-Wing." *Id*. at 14. Instead, Plaintiff was assigned to B-Wing by Lopez and Rendon, allegedly because they knew that wing did not "honor (ADA) showers for the Blacks," and that showers for Black prisoners on the B-Wing were on the third floor. *Id*. at 15. When Plaintiff confronted Lopez about his placement, Lopez allegedly told him that he was "being difficult" and that Lopez was "showing [Plaintiff that he] moves where [officers] say, not where [Plaintiff] want[s] to." *Id.* Plaintiff asked Rendon for permission to use the accessible showers in an adjacent wing, but Rendon declined, stating that he did not have the authority to do so. *Id.* at 16. Plaintiff filed a grievance, which was granted ten days later, and was allowed to use the accessible showers in the adjacent wing. *Id.* at 16.

Plaintiff contends that Defendants' actions were retaliatory due to his filing of grievances against Macklin and Oliveros. He also alleges that Defendants discriminated against him because of his disability. ECF No. 15 at 16-17. Plaintiff disputes the existence of the "kite" and alleges that other prisoners kicked his cell door and called him names, such as pervert, pedophile, freak, weirdo, and a rapist, as a result of the I.E.X. sign on his cell door. *Id.* at 17. Hayes seeks monetary damages. *Id.* at 3.

## III.   ANALYSIS

Plaintiff raises claims pursuant to Section 1983 alleging First Amendment retaliation, violation of procedural due process rights under the Fourteenth Amendment, deliberate

4

indifference under the Eighth Amendment, and a violation of the Americans with Disabilities Act ("ADA").

### A.   Retaliation

Plaintiff alleges that Oliveros and Macklin intentionally set up a "ruse" to harass him after he filed grievances against them, and that their actions amounted to retaliation.  ECF No. 15 at 5.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the prisoner's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  Filing grievances, including those related to healthcare, is considered a protected First Amendment activity.  *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

Liberally construed, Plaintiff states cognizable claims of retaliation against Oliveros and Macklin for allegedly setting up a "ruse" to harass him, causing him to be held in a cage for several hours, and unfairly writing him up.  Although Plaintiff alleges that Wilson and Toscano spoke to him during the incident, Plaintiff does not allege any facts suggesting that he had filed grievances against them, or that they were aware of Plaintiff's grievances against Oliveros and Macklin or their "ruse."  Accordingly, while the retaliation claims against Oliveros and Macklin will proceed, the retaliation claims against Wilson and Toscano are DISMISSED for failure to state a claim.  Because the Court previously screened this claim and granted Hayes leave to amend on a prior occasion, the Court concludes that any further leave to amend as to Wilson and Toscano would be futile.  *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.").

### B.   Procedural Due Process

Plaintiff alleges that his due process rights were violated when he was required to place I.E.X. on his cell door prior to receiving a rules violation report or hearing regarding his alleged indecent exposure.  ECF No. 15 at 11.

United States District Court
Northern District of California

United States District Court
Northern District of California

While due process may be implicated by prison disciplinary proceedings, placement in an I.E.X or other segregated unit pending the investigation of disciplinary charges generally does not implicate the Fourteenth Amendment. *See Resnick v. Hayes*, 213 F.3d 443, 448-49 (9th Cir. 2000) (plaintiff did not have protected liberty interest in being free from confinement in segregated housing unit pending his disciplinary hearing); *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (same). Due process rights may be implicated when the change in conditions imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *cf. Shotwell v. Brandt*, Case No. 10-cv-05232-CW, 2012 WL 6569402, *2 (N.D. Cal. Dec. 17, 2022) ("The hardship associated with placement in administrative segregation, such as a loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause itself."). Here, the placement of an I.E.X. sign on Plaintiff's cell door alone is not considered a condition of confinement that imposes "atypical and significant hardship." *Sandin*, 515 U.S. at 484; *Williams v. Allison*, No. 19-cv-00731-BAM, 2021 WL 3502359, *10 (E.D. Cal. Jul. 21, 2021) ("Insofar as Plaintiff alleges that his right to due process was violated because he was held in the I.E.X. unit pending investigation and hearings on the charges against him, he fails to state a cognizable claim.").

Moreover, although he alleges that his rules violation report for indecent exposure was false, Plaintiff does not dispute that he had an opportunity to challenge the alleged violation through the prison's disciplinary procedures. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (describing process due during prison disciplinary proceedings where a prisoner may lose credits or be placed in solitary confinement). Due process requires nothing more. *See Patkins v. Ferguson*, No. 18-cv-05139-EMC, 2018 WL 6671513, *2 (N.D. Cal. 2018) ("Even if [a] false charge . . . result[s] in discipline that amounts to the deprivation of a protected liberty interest under *Sandin*, a § 1983 claim is not stated if the inmate is afforded the procedural protections required by federal law at the disciplinary hearing.") (citing *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002); *see also Garrott v. Glebe*, 600 F. App'x 540, 542 (9th Cir. 2015) (noting that there is no federally recognized right for a prisoner to be free from false accusations).

Because Hayes has not stated a cognizable due process claim, the claim is DISMISSED. Further, because the Court has already screened a prior complaint and granted Hayes leave to amend, the Court determines that further leave to amend would be futile. *See Wheeler*, 894 F.3d at 1059.

### C.    Eighth Amendment Deliberate Indifference

Hayes alleges that requiring him to place the I.E.X. sign on his cell door violated his rights because he suffered verbal harassment from other prisoners as a result. ECF No. 15 at 17. It is unclear whether the claim is directed at Rendon, who notified Hayes that he would be required to have the I.E.X. sign on his door.

It is well established that under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect prisoners from physical harm. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). This includes an affirmative duty to protect prisoners from violence at the hands of other prisoners. *See id* at 833. The failure of prison officials to protect prisoners from attacks by other prisoners or dangerous conditions at the prison violates the Eighth Amendment when (1) the deprivation alleged is, "objectively, sufficiently serious," and (2) the official is, subjectively, deliberately indifferent to the prisoner's safety. *Id.* at 835. "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Liability may follow only if a prison official "knows that [the prisoner] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Here, even liberally construing the claim, Plaintiff does not state a cognizable Eighth Amendment deliberate indifference claim because Plaintiff fails to show that Rendon or any other defendant was aware that placement of the I.E.X. sign put Plaintiff at "substantial risk of serious harm." *Farmer*, 511 U.S. at 847. Plaintiff alleges that he was subjected to verbal harassment by other prisoners; however, "verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (citation modified), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996); *see Mills*

United States District Court
Northern District of California

7

*v. Ibarra*, No. 18-cv-02135-CAB-RBM, 2019 WL 2249982, *3 (S.D. Cal. May 24, 2019) (complaint failed to state deliberate indifference claim where the plaintiff "d[id] not allege that he was actually harmed by other prisoners as a result of [the correctional officer's conduct] nor d[id] he allege that he was ever threatened with harm by other prisoners as a result of [the correctional officer's] actions.").

The Eighth Amendment claim, presumably alleged against Rendon, is DISMISSED. Moreover, because Plaintiff has been granted leave to amend on a prior occasion, the Court concludes that any amendment to this claim would be futile.  The dismissal is without leave to amend.  *See Wheeler*, 894 F.3d at 1059.

### D.    ADA

Plaintiff alleges that Lopez and Rendon assigned him to B-Wing because B-Wing did not have ADA-accessible showers for Black prisoners despite his explicit request for accessible first floor showers due to his use of a cane.  ECF No. 15 at 15.

Title II of the ADA "prohibits public entities from discriminating against or excluding the disabled from participating in or benefitting from a public program, activity, or service 'solely by reason of disability.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 690-91 (9th Cir. 2001), *abrogated on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir.2002).  "Discrimination includes a failure to reasonably accommodate a person's disability." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds*, 575 U.S. 600, 602-17 (2015).  "To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant."  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

Liberally construed, Plaintiff's allegation that his placement in B-Wing after he notified Lopez and Rendon that B-Wing did not have accessible first floor showers to accommodate his disability states a cognizable claim for damages under Title II.  However, as ADA claims implicate the entity rather than the individual employees who engaged in alleged discrimination, and Plaintiff also names the employees in their official capacity, the Court construes this claim as one against CDCR.  *See* ECF No. 15 at 2; *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187 (9th Cir.

United States District Court
Northern District of California

2003) (suit against state officials in official capacity is a suit against the public entity); *see also Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (holding that the "ADA applies only to public entities"). The ADA claims against Lopez and Rendon are therefore DISMISSED, but the ADA claim against CDCR will proceed.

## IV.    CONCLUSION

The Court orders as follows:

1. Plaintiff states cognizable claims of First Amendment retaliation against Defendants Olivares and Macklin.

2. Plaintiff states a cognizable claim against CDCR for damages under Title II of the ADA for his placement in B-Wing.

3. All other claims and defendants are DISMISSED without leave to amend.

4. Defendants Olivares, Macklin, and CDCR shall be served.

   a. Service shall proceed under CDCR's e-service pilot program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk of the Court is directed to serve on CDCR via email the following documents: the operative complaint (ECF No. 15), this order, a CDCR Report of E-Service Waiver form, and a summons.

   b. No later than **45 days** after service of this order via email on CDCR, CDCR shall provide the Court a completed CDCR Report of E-Service Waiver advising the Court whether defendants will be waiving service of process without the need for service by the United States Marshal Service ("USMS") or whether any defendant declined to waive service. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office, which, within **21 days of service**, shall file with the Court a waiver of service of process for the defendants waiving service.

   c. Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each defendant who has not waived service according to the

9

United States District Court
Northern District of California

CDCR Report of E-Service Waiver a USM-285 Form.  The Clerk shall provide to the USMS the completed USM-285 form and copies of this order, summons, and operative complaint for service upon each defendant who has not waived service.  The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

    d.  Additionally, the Clerk shall mail a copy of this order to Plaintiff.

5.  In order to expedite the resolution of this case, the Court orders the following briefing schedule:

    a.  No later than **90 days** from the date of service, Defendants will file a motion for summary judgment or other dispositive motion.  The motion will be supported by adequate factual documentation, shall conform in all respects to Federal Rule of Civil Procedure 56, and will include as exhibits all records and incident reports stemming from the events at issue.  If Defendants are of the opinion that this case cannot be resolved by summary judgment or other dispositive motion, they will inform the Court prior to the date the dispositive motion is due.  All papers filed with the Court will be promptly served on Plaintiff.

    b.  At the time the dispositive motion is served, Defendants will also serve, on a separate paper, the appropriate notice or notices required by *Rand v. Rowland*, 154 F.3d 952, 953-54 (9th Cir. 1998) (en banc), and *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.4 (9th Cir. 2003).  *See Woods v. Carey*, 684 F.3d 934, 940-41 (9th Cir. 2012) (*Rand* and *Wyatt* notices must be given at the time motion for summary judgment or motion to dismiss for non-exhaustion is filed, not earlier); *Rand*, 154 F.3d at 960 (separate paper requirement).

    c.  Plaintiff's opposition to the dispositive motion, if any, will be filed with the Court and served upon Defendants no later than **28 days** from the date the motion was served upon him.  Plaintiff must read the attached page headed

"NOTICE -- WARNING," which is provided to him pursuant to *Rand*, 154 F.3d at 953-54, and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988). If Defendants file a dispositive motion claiming that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), he should take note of the attached page headed "NOTICE -- WARNING (EXHAUSTION)," which must be provided to him as required by *Wyatt*, 315 F.3d at 1120 n.4.

    d.  If Defendants wish to file a reply brief, they shall do so no later than **14 days** after the opposition is served upon them.

    e.  The motion shall be deemed submitted as of the date the reply brief is due. Absent a further order of the Court, no hearing will be held on the motion.

6. All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

7. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further Court order is required before the parties may conduct discovery.

8. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." Plaintiff must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated:  April 9, 2026

_____
Eumi K. Lee
United States District Judge

United States District Court
Northern District of California

11

United States District Court
Northern District of California

**NOTICE -- WARNING (SUMMARY JUDGMENT)**

If defendants move for summary judgment, they are seeking to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact-- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

**NOTICE -- WARNING (EXHAUSTION)**

If defendants file a motion for summary judgment for failure to exhaust, they are seeking to have your case dismissed. If the motion is granted it will end your case.

You have the right to present any evidence you may have which tends to show that you did exhaust your administrative remedies. Such evidence may be in the form of declarations (statements signed under penalty of perjury) or authenticated documents, that is, documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers, such as answers to interrogatories or depositions.

If defendants file a motion for summary judgment for failure to exhaust and it is granted, your case will be dismissed and there will be no trial.